May it please the court. In this case, the district court imposed a procedurally unreasonable 64-month sentence in prison for Kevin Reed when it failed to address his factually supported and legally meritorious argument of his family's dire circumstances. In this case, the defendant did present an issue in mitigation that had recognized legal merit and was fully supported at sentencing with extensive facts, including testimony. In this case, the district court's only comment regarding the issue and Reed's argument was that Reed had a functional, healthy family. This statement altogether, which in the record is merely a passing comment regarding the family's circumstances, demonstrate that the district court completely disregarded the facts in the argument made by Reed. His family's situation was completely opposite of functional and healthy. Now, the district court did not, as I recall, I don't know whether this was because of timing or because the district court just decided not to do it, go through any kind of Garcia-Segura, you know, have I covered all of the points that you wanted to raise or your major points, nothing like that. He just rolls by with the function of healthy family. Yes, Your Honor. Yeah. Counsel, what about the written statement of reasons for the sentence where the judge clarifies more that he enjoyed a healthy and functional family life as a child, goes into the health issues of his wife and children now, and then explains that, in essence, the severity of the crimes, the harm to the victims, and the defendants. I mean, he was lying in proffers. He was not accepting responsibility at all, and all of that outweighs those factors in mitigation. Why isn't that sufficient for us to affirm, rather than remand and have the judge say the same thing on the record? I would say, in this particular case, contemporaneously with the giving of the guideline 64-1 sentence, and after ultimately it was two different appearances before the court at sentencing, with the extensive information that was given, the reaction from the court or the sentence of the court, and at that time, made a point of articulating many of the reasons that Your Honor has just read in aggravation, but paying no time to the particular issue that we're raising here on appeal. I think that it's more telling. I understand what the court's saying, though. I mean, look, we've got, are we not allowed to look at that? No, you are. But it's going back to clear up, obviously, from the defense's point of view, it's clearing up a record that had been made at the time. Well, you're now asking us to send it back to clear it up two years later, right? And I think that in order to deal with what had been presented, I think what the court in Schroeder, what the expectation of this court is for review of the sentence or the process of sentencing, I think requires more of a detailed explanation of why I'm discounting this particular issue, which is not a frivolous issue, it is a serious one. It's not frivolous, but these aren't that unusual circumstances. They are not, Your Honor. I know they're not. The idea of that financial and caretaking, the void that's caused by someone's actions aren't self-inflicted. Those wounds are self-inflicted. They're self-inflicted and they are almost universal. But what I'm asking the court to consider in this case is basically under 5H1.6, under the 3553 factors, that it's extraordinary. That it's not just conventional. And I mean that maybe to flip of a term. I'm not disagreeing that it's a legitimate, serious argument. I'm just saying, having seen a lot of white-collar cases, these circumstances don't look terribly unusual to me. They may be a little unusual in terms of severity, but when you've got crimes as aggravated as these, and the false proffers, the attempt to withdraw at the mid-trial guilty plea and so on, and we've got a district judge who in the written statement of reasons addresses these matters and makes clear that they're not convincing to him, it's difficult for me to see a point in remand here. I understand the court's position. I do. I think under the circumstances. Tell me why I'm wrong. I don't know if I can say you're wrong. I can't say, but in this particular case, I can say what at the time of sentencing, and I guess that's live, in person, we're present, our emotions are flowing, everybody is doing what we did. We know what Kevin Reed did in this case as far as what Your Honor just said about the proffers, about the plea and guilty in the middle of trial, then coming back and trying to withdraw his guilty plea. How that is what we would classify as non-acceptance of responsibility. That's putting it mildly. Well, the ramifications apply to guidelines as well as to 3553, and just as this does too. I think that that point was made clear, and I think in the end that was the driving force, obviously, behind the 64-month sentence, a punitive sentence because of his behavior in the system. I'm saying that despite that, despite being well aware that that had occurred, we still have this significant mitigation that needed to be presented that almost, for lack of a better way to say it, in spite of Kevin Reed, to argue on behalf of those circumstances that it did exist. So your point has to be that, as you were starting to say, timing matters, that if this had been considered at the right time in the right place, maybe that other memorandum wouldn't have even been written the way it was. I don't know. It's very hard to say. Judge Hamilton put the screws to me on it, and I understand why he did it, and I do. And my rebuttal to that is because the sentence, in the opinion of the defense, was based on more of not necessarily what the crime was, and then just going to consider what the co-defendants received after the sentencing and their involvement, somewhat equivocal but maybe not as significant as Kevin Reed's role. It's almost punitive because he exercised a right that he may have under the law. Ultimately, whether he accepted responsibility or not was clear because he went to trial. Ultimately, he is penalized for pleaing, penalized in the sense that he would not get consideration of guideline points for pleaing in the middle of a trial. But ultimately that became, in a sense, more than just the crime, more than the damage that he caused, more than the pain and the tragic financial loss that he may have caused. That became predominant. And I can't say that that might not even be fair, but the fact is that this issue was given short shrift, and I believe at the time when it was ripe, when it was the heat of the moment, that's what happened. And I think that I know, Your Honor, and he did. He wrote written findings that he didn't state in open court. It is part of the record. I can't discount what Your Honor is saying. I'm saying that I believe that the defendant should be entitled to have, he had a fair hearing on it, but I think he should have a fair resolution in court about what the court actually believed about the extensive evidence that was presented. It wasn't cursory. It wasn't just a proffer. It was established in the sentencing memorandum with medical records. His wife did testify. That's the point, and I think that's where I'm resting my argument at this point. Okay. If you would like, you could save some rebuttal time or not. Judge, I will. There is another issue raised I would indicate to the court that I'm resting on the brief as to that issue if there are no questions about it. All right. Mr. Bindi. Good morning. May it please the Court. What is required of the district court in the sentencing procedurally is that it engage in an analysis of the mitigating evidence as well as the aggravating evidence and impose a sentence that is sufficiently explained on the record that the court of review can determine the reasons for the sentence imposed. That's true, but I guess what worries me, we have a general rule that the oral sentence prevails if there's any conflict with what's written down later, and the idea of making sure everything is put before the judge at one time is to get that balancing, if you will, between whatever it is that would point to a longer sentence versus something that might point away from it. So there's always a risk in a memorandum of cleaning it up, of coming up with some after-the-fact justification that might not have been a justification, and these were, I think, serious health issues that he was trying to bring to the court's attention. I wouldn't trivialize them. I don't think that the court trivialized them, Your Honor. The court didn't say anything at all about them on the oral statement. Actually, I would differ from that. The court did make reference to the evidence that was presented. The numerous letters and so forth, and the in-court appearance. He says clearly he's loved by his family. He's been a wonderful father, a wonderful husband, a wonderful brother. He has numerous letters, but there's nothing gripping. There's nothing really engaging with the health issues that either his wife or his son are facing. Well, but still the court explained based on the aggravating factors, and there are several. Yeah, no, I agree. There are certainly several aggravating factors. That's true. The court also made reference to the fact that the argument the defendant was making was for a sentence of probation. He wanted no prison time based exclusively on the family circumstances that were presented to the court, and the district court specifically stated that. But can you give me a sentence in the oral hearing that actually alludes to his argument in mitigation, this argument in mitigation? I mean, I've been searching for one. Well, he makes reference to the supporting evidence. It's in the defendant's appendix at 18. He's a good father, a good husband. That's right. That's what I'm looking at, too. I actually have it marked, and it just says he has numerous letters. I don't see anything about autism. I don't see anything about Meniere's disease. I don't see anything. I don't see what you're talking about. Well, but those sorts of considerations, Judge, go to whether or not being deprived of the defendant being with his family as a caretaker. And I think that the district court could look at that evidence. But there's no sentence that says even though your family members rely on you heavily as a caretaker, I think that's outweighed by the despicable nature of your behavior. I just the sentence is not there. That sentence is not there. But on the other hand, there is some evidence. There is considerable evidence of the son's autism. He's also evidence of the fact that he is taking college classes. But not referred to in the district judge's comments. He has a learning disability. He has a learning disability,  No, I'm aware of that. I'm just saying you're saying that now, and we both know that this is in the record, but it's not there in the judge's explanation of his sentence. It does not need to be, though, Your Honor, because if the record It's the most important mitigating factor he has. And it is not a factor that the court overlooked. And that's really all that the record needs to display is that the district court did not look past That's why I was asking you for some place where he actually says he's looking at that other than some extremely vague reference to, quote, numerous letters and statements attesting to his character and his decency, period, close quote. I believe that the reference to the evidence presented in support of the mitigating argument and the reference to the fact that the argument is being made that the sentence should be one of probation, and the district court did both of those things, indicates that the court considered the mitigating argument. Well, then we might as well just get rid of our rule that says that district courts have to talk about somebody's most important mitigating factor because all they'll have to do is say, I looked at all the evidence, and I don't like the sentence recommendation, and now here's my sentence. It's really meaningless. Well, but, Your Honor, if the record establishes why the court chose the sentence it imposed, if it shows that the court engaged in a discretionary balancing of the mitigating and the arguing factors, this court's cases also say that a judge is not required to spend a lot of time talking about a mitigating factor. Not on stock arguments, but we've said if this is your main argument, it's not a frivolous argument, and nobody's saying that this is frivolous. I mean, I feel as though if the question had been asked by the court, is there anything else I haven't talked about that you want me to say something about, and defense had said our whole point is that this is a very unusual family medical situation, perhaps the judge would have said something. I hope so. Well, perhaps. There was no prompting by the district court for the defense to do that. We've been encouraging district judges to do that. I would think that prosecutors also have a significant interest in prompting district judges to ask that question. That may be so, Your Honor. Certainly it would streamline things a little bit if it was done more. Well, just nip these problems in the bud. It would get the right record. That's what Dinelli and Garcia-Segura are intended to do, so that the corrections can happen, in essence, while the emotions are hot, or, in essence, in the moment, rather than on remand a year and a half later. So I'll just offer that as advice to you in the U.S. Attorney's Office. We'll certainly make that known, Your Honor. But I think that this record establishes that the reasons for the district court finding the mitigating argument that was considered to be not persuasive in light of the aggravating factors tells this court what it needs to know, and that on that basis we would ask that the court affirm the sentence. Thank you. Okay. Thank you. Anything further, Mr. McQuaid? If there are no questions from the court. I see none, so thank you very much. Thanks as well to the government. We'll take the case under advisement.